IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. CR-16-171-R |
| | )                  CIV 18-1222-R |
| BR IAN LEE DOWNING, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Before the Court is Defendant Brian Downing's Amended Motion to Vacate, Set Aside, or Correct Sentence, Doc. No. 41, filed pursuant to 28 U.S.C. § 2255. The Government has responded in opposition. Doc. No. 47. Upon review, the Court denies Defendant's motion.

On September 8, 2016, Mr. Downing was charged by information with one count of bank robbery in violation of 18 U.S.C. § 2113(a). Doc. No. 1. Eight days later, he pleaded guilty to the charged offense. Doc. No. 4. In February of 2017, the Court sentenced Mr. Downing to the statutory maximum of 240 months in prison, with three years of supervised release. Doc. Nos. 14, 16. After an appeal, the Tenth Circuit affirmed the Court's determination. Doc. No. 25. Mr. Downing now moves to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Doc. No. 41.

Section 2255 provides that "[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may

1

move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a).

Mr. Downing presents five grounds for relief, which all appear to be premised on the alleged ineffective assistance of counsel. Doc. No. 41. First, he contends that his counsel, Ms. Summers, allowed him to plead guilty without a probable cause hearing. *Id.* at 2. Second, he asserts that she failed to move for a downward departure based upon his diminished mental capacity. *Id.* at 3. Third, he alleges that she failed to inform him that he could withdraw his guilty plea. *Id.* at 5. Fourth, he states that he entered his guilty plea unknowingly because Ms. Summers misled him into believing that he would receive a sentence reduction for his acceptance of responsibility. *Id.* at 6–7. Finally, he argues that he did not receive the "benefit of the bargain" because he was not provided the sentence reduction Ms. Summers promised in exchange for his guilty plea. *Id.* at 7.

The Sixth Amendment to the United States Constitution guarantees the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate both that: (1) counsel's representation fell below an objective standard of reasonableness; and, (2) the deficient performance prejudiced the defense. *Id.* at 687–88; *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In other words, a defendant alleging ineffective assistance of counsel must show both "incompetence and prejudice." *Kimmelman*, 477 U.S. at 381. "Courts are free to address these two prongs in any order, and failure under either is dispositive." *United States v. Barrett*, 797 F.3d 1207, 1214 (10th Cir. 2015) (internal quotation marks and citation omitted).

Under the first *Strickland* prong, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Judicial review of counsel's performance is "highly deferential," *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011), and the defendant must overcome the strong presumption that his counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

As to the second *Strickland* prong, the defendant must demonstrate that counsel's performance was so prejudicial "there is a reasonable probability that, but for his unprofessional errors, the result of the proceeding would have been different." *See United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir.1997); *see also Glover v. United States*, 531 U.S. 198, 200 (2001) ("[I]f an increased prison term did flow from an error the petitioner has established *Strickland* prejudice"); *United States v. Horey*, 333 F.3d 1185, 1188 (10th Cir. 2003) (same).

First, Mr. Downing asserts that Ms. Summers was ineffective because she failed to request a probable cause hearing before his guilty plea. Doc. No. 41, p. 2. This claim has been waived. "When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). By his guilty plea, Mr. Downing waived any constitutional challenges to the bank robbery charge

3

that he may have had prior to entering his plea, barring a challenge to the voluntary or intelligent nature of the plea itself. *See id.*; *United States v. Blocker*, 269 F. App'x 117, 120 (2d Cir. 2008) (finding defendant's guilty plea to be a waiver of his ineffectiveness claim relating to his counsel's failure to request a probable cause hearing). His first claim of ineffective assistance does not relate to the voluntariness of his plea; it is thus foreclosed.

To the extent Mr. Downing's first claim could be construed as relating to the voluntary and intelligent character of his guilty plea, it still fails. Ms. Summers states that upon conferring with Mr. Downing on August 30, 2016, he confessed to her that he had committed the charged offense and expressed his intention to take responsibility by pleading guilty as quickly as possible. Doc. No. 47-1, p. 3. It was thus entirely reasonable for Ms. Summers not to request a probable cause hearing.

Moreover, Mr. Downing does not demonstrate that he was prejudiced by Ms. Summers's decision. He contends that in a probable cause hearing the government could not have proven a necessary element of the charged offense—that he used force and violence, or intimidation in committing the crime. Doc. No. 41, p. 4. He argues that part of the Government's evidence of "force and violence, or intimidation" involved a note that he passed to the bank teller during his alleged robbery. The note read, "GIVE ME ALL THE Money NO DIE Packs," and was followed by Mr. Downing's verbal request that the teller not hit the "robbery button" and "hurry with the money." Doc. No. 41, p. 3; Doc. No. 47, p. 4. Mr. Downing contends that if a probable cause hearing was held, it would have been shown that his recording of the word "DIE" was a misspelling of the word "DYE." Doc. No. 41, p. 3. Under those circumstances, he says the Government would not have

4

been able to prove that he committed the bank robbery with "force and violence, or intimidation" as required under 18 U.S.C. § 2113(a). *Id.*

The misspelling in the note was not a determinative factor in establishing the element of "force and violence, or intimidation." Doc. No. 47-1, p. 3. In combination with his other actions, Mr. Downing's note—even without the misspelling—would have satisfied the element of intimidation under 18 U.S.C. § 2113(a). *See United States v. McCranie*, 889 F.3d 677, 680 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1260 (2019) ("intimidation requires a purposeful act that instills objectively reasonable fear (or expectation) of force or bodily injury."). At bottom, Mr. Downing's first claim does not entitle him to the relief he seeks.

Second, Mr. Downing claims that Ms. Summers was ineffective because she did not file a motion or formal request for a sentence reduction based on diminished capacity pursuant to U.S.S.G. § 5K2.13. Doc. No. 41, p. 4. He argues that if such a motion had been filed, or request made, the Court would have likely been more lenient. *Id.* Ms. Summers did, however, file a nine-page sentencing memorandum, which included a discussion of Mr. Downing's mental health issues and diminished capacity, in addition to a request for a downward variance based upon those, and other factors. Doc. No. 12. In fact, she specifically cited Mr. Downing's mental health diagnoses and the traumatic experiences that contributed to his mental status in her memorandum. *Id.* at 2–3, 5–6; *see also* Doc. No. 47-1, p. 4. That Ms. Summers did not file a motion does not render her conduct deficient. Additionally, because the information of Mr. Downing's diminished capacity was

presented to the Court, he cannot establish prejudice from counsel's failure to raise the issue in a formal motion, and accordingly, he is not entitled to § 2255 relief on that basis.

Third, Mr. Downing claims that Ms. Summers was ineffective because she never told him that he could file a motion to withdraw his plea of guilty. Doc. No. 41, p. 5. Under Federal Rule of Criminal Procedure 11(d)(2)(B), a defendant may withdraw his plea of guilt prior to sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." Ms. Summers states that she did not advise Mr. Downing of his ability to withdraw his guilty plea, likely because attempting to withdraw his plea would be fruitless. Doc. No. 47-1, p. 6. Furthermore, Mr. Downing does not argue that there was a fair and just reason for requesting withdrawal. Nor does he even attempt to demonstrate that he was prejudiced by Ms. Summers's conduct. Accordingly, his third claim fails.

Fourth, Mr. Downing claims Ms. Summers was ineffective because she misled him into believing that if he pleaded guilty, he would receive a two- to three-level sentence reduction; he thus argues his guilty plea was entered unknowingly. Doc. No. 41, p. 6–7. He asserts that if he "would have known that there was ANY chance that he would not receive said sentence reduction, he would NOT have pled guilty." *Id.* However, according to her affidavit, Ms. Summers did not promise Mr. Downing a sentence reduction in exchange for his guilty plea. Instead, she provided Mr. Downing with what she believed would be his advisory guideline range, predicated in part on a two- to three-level downward adjustment for acceptance of responsibility. Doc. No. 47-1, p. 7.[1]

---

[1] While awaiting sentencing, Mr. Downing was charged with attempting to have drugs brought into the jail where he was being housed. *Id.* at 5. The U.S. Probation Office thus recommended the Court deny any downward level adjustment for acceptance of responsibility. *See* Doc. No. 10, ¶¶ 16, 54. To the extent it is relevant here, Ms.

6

What's more, Mr. Downing's representations to the Court directly contradict the assertion that he was misled by counsel into believing his guilty plea would be rewarded with a reduced sentence. For example, in his Petition to Enter a Guilty Plea, Mr. Downing represented to the Court that he knew his plea of guilty might have no effect on his sentence. *See* Doc. No. 4, ¶¶ 17, 18. And at his change of plea hearing, he had the following exchange with the Court:

> THE COURT: Is your plea of guilty made voluntarily and completely of your own free choice?
> THE DEFENDANT: Yes, sir.
> THE COURT: Have you been forced of threatened in any way or promised anything by any person to plead guilty?
> THE DEFENDANT: No, Your Honor.
> THE COURT: Has any officer or agent of any branch of the government—federal, state, or local—promised, suggested, or predicted that you'll receive a lighter sentence or probation or any other form of leniency in return for your plea of guilty?
> THE DEFENDANT: No, Your Honor.

Doc. No. 33, p. 8:4–15. In his motion, Mr. Downing offers no evidence to challenge these statements. Accordingly, the claim that his plea was entered unknowingly is insufficient to vacate, set aside, or correct his sentence under § 2255.

In Mr. Downing's fifth and final claim, he asserts that his motion should be granted because he did not receive the "benefit of the bargain." Doc. No. 47, p. 7. Put differently, he claims his sentence should be altered because he did not receive the two- to three-level downward adjustment he alleges was promised in exchange for his guilty plea. *Id.* To the extent Mr. Downing raises this claim to demonstrate his counsel's ineffectiveness, the

---

Summers's estimation of Mr. Downing's sentence cannot be considered misleading on the basis that she failed to advise him that any potential downward adjustment would be in jeopardy if he participated in criminal activity while awaiting sentencing.

claim fails. As discussed above, Ms. Summers's testimony, *see* Doc. No. 47-1, p. 4–7, and Mr. Downing's own representations to the Court, *see* Doc. No. 4, ¶¶ 17, 18; Doc. No. 33, p. 8:4–15, demonstrate that he was not promised anything in exchange for his plea of guilty. To the extent Mr. Downing patterned this claim after cases like *United States v. Saenz*, 646 F. App'x 620 (10th Cir. 2016), —where a defendant alleges to have been denied a benefit promised to him in a plea agreement—it also fails. Here, there was no plea agreement, Mr. Downing entered a plea of guilty on his own accord. As a result, there was no contracted benefit or bargain between Mr. Downing and the Government. His final claim fails under either construction.

Fore the foregoing reasons, the Court denies Defendant Mr. Downing's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, Doc. No. 41.

**IT IS SO ORDERED** this 21st day of April 2020.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE